UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

KEN WILLIAMS                                    CIVIL ACTION NO. 3:12-cv-1257
     LA. DOC#427527
VS.                                             SECTION P

                           JUDGE ROBERT G. JAMES

MARK SHUMATE, ET AL.                            MAG. JUDGE KAREN L. HAYES

REPORT AND RECOMMENDATION

*Pro se* plaintiff Ken Williams, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on May 10, 2012.  Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC). He is incarcerated at the West Carroll Detention Center (WCDC), Epps, Louisiana; however, he complains of various conditions and circumstances he experienced at WCDC and at the East Carroll Detention Center (ECDC) and the Riverbend Detention Center (RDC).  He sued the "owner" of WCDC, Sheriff Mark Shumate, Wardens Jones, Harris, Brown, McJimsey, and Hedgmon, Corrections Officers Knight, Jones, Poche, Burch, Barnes, and Hayes and health care professionals "Jane Doe" and Shonna Mills. He prays for injunctive relief and  compensatory and punitive damages. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C.  §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

*Background*

Plaintiff is an inmate in the legal custody of the LDOC. He has at various times been incarcerated at the WCDC, the ECDC, and the RDC.

In a rambling, 26-page, handwritten complaint, he asserts a litany of alleged violations of his constitutional rights as follows:

1. He claims that "because he knows how to legally defend himself" and has done so in a previously filed federal lawsuit challenging the confiscation of his legal mail, "he has become the target of monitoring, provocation, and oppression, apparently initiated from the administration at [RDC]" and these acts – including the confiscation of unspecified items of "legal mail" –  have continued during his incarceration at RDC, ECDC, and WCDC.

2. A grievance filed on October 7, 2009, concerning the loss of "legal mail" at RDC was ignored.

3. "There was never a response..." to a letter submitted to the Department of Justice on July 13, 2010, while plaintiff was at RDC.

4. Likewise there was no response to plaintiff's May 10, 2010, letter to the LDOC.

5. On April 25, 2011, while at RDC, plaintiff filed a brief in support of his motion to proceed *in forma pauperis* in an appeal pending in the 5th Circuit Court of Appeals.

6. On April 6, 2011, plaintiff complained to the authorities at RDC "relative to the window not being fully raised during feeding in the kitchen; that because the window was nearly closed Williams could not observe the prisoners feeding; and that this created a safety risk. The complaint was written in relation to Williams food being timed by submissive prisoners who were utilized by security to target the oppression of Williams." This complaint was ignored.

7. On April 27, 2011, plaintiff filed a grievance to the authorities at RDC complaining about "(1) the bricks not being painted, (2) molding and mildew build-up in the shower area where there are no tiles, (3) freezing temperatures, even during winter time, and (4) there being no sink and patients bed in the nurse station."  He apparently also complained that his legal mail

was "monitored"; that there were no certified mail receipts, that medical expenses were excessive; improper medical treatment; excessive prices and illegal taxes; "feeding during chow"; insufficient access to legal material; the failure of the administration to respond to grievances; and no impartial decisions in plaintiff's favor.  The grievance was rejected, plaintiff appealed and re-filed, however both the appeal and his re-filed grievance were ignored.

8. On April 29, 2011, Warden Jones assigned plaintiff to work with a "sandbagging crew." At that time plaintiff was inmate counsel and his assignment to this crew done "... hatefully, discriminatingly, and provokingly..."  According to plaintiff, this should have been a voluntary and not mandatory assignment and therefore plaintiff refused to participate and as a result he was locked-up, treated cruelly, and transferred to ECDC "with oppressive intent and attachment."

9. On May 8, 2011, while confined to cell block for refusing to participate in the sandbagging assignment, Calvin Barnes insisted that plaintiff sign four disciplinary reports. Plaintiff refused. All mattresses were removed from his cell and plaintiff was ordered "to go to the back area which was out of view of the camera and next to an open closet." Plaintiff refused because he was in fear of receiving a battery. Barnes then physically forced him to the back of the hall where Barnes then "gave provoking orders." Having failed to provoke plaintiff, Barnes returned him to another overcrowded cell where he was subjected to a strip search and the seizure of plaintiff's "keylock" and legal work.  Barnes then threatened to spray mace "in order to toxicate the cell"; however, he did not spray the mace and instead returned the mattresses, the prisoners' clothes and plaintiff's legal work. He did not return plaintiff's key. Plaintiff filed a grievance but it was ignored.

10. On May 8, 2011, plaintiff refused to eat "because of being targeted by the

3

administration and security through submissive prisoners with feeding, and because Williams could not adjust his location in line (as if actually at chow) to avoid being time by those feeding."

11. Plaintiff's refusal was not logged by security; instead he was threatened by the nurse with being placed on suicide watch and being examined by the psychiatrist "who would write anything crazy on paper." These "threats" forced plaintiff to eat and on May 10, 2011, he was transferred to ECDC. His grievance about these circumstances was ignored.

12. On May 9, 2011, plaintiff appealed to the warden at RDC, but his appeal was ignored.

13. On May 10, 2011, plaintiff appealed the disciplinary court conviction rendered at RDC on May 9. He received no response to the appeal.

14. On May 10, 2011, plaintiff filed another grievance at RDC; he received no response.

15. Since March of some unspecified year, plaintiff "... has been (and continues till this date 5/8/12) having to adjust his location in line, during feeding, in order to avoid being timed by security and submissive prisoners who are utilized by security to drug Williams food in various ways."

16. On May 22, 2011, plaintiff complained to Burch "about his trays being timed by inmates." Burch then "expressed false actions of ignorance." Plaintiff then left the kitchen without eating and filed a complaint at ECDC on June 2, 2011. This complaint was ignored. Thereafter, "the food being served (one or sometimes two serving pans or canisters) began to be hidden out of view behind stacked trays; and inmates feeding were slowing down the serving line oddly."

17. Plaintiff submitted a grievance about these conditions on May 26, 2011, but Warden Harris and Sheriff Shumate ignored his grievance.

18. On June 9, 2011, plaintiff filed a grievance against Burch and Poche "for allowing

4

inmates feeding to tamper with, drug, and time Williams' trays (food)." Plaintiff also complained when Burch ordered him to get his tray and eat or leave. Burch tried to assure plaintiff that the food servers were not doing anything, but plaintiff complained that Burch's vantage point did not allow him to see what the other prisoners were doing.

19. In June 2011 plaintiff was transferred to WCDC and "out of oppressive attachment and retaliation, [plaintiff] was intentionally placed in a dormitory where chaotic undisciplined inmates lived."  His "food began to be timed by security through submissive inmates" causing plaintiff to "develope fevors, decreases in energy etc. at most meals."  According to plaintiff, "the food was initially observable – if one wished to view it – however, Williams actions were studied, and as a result, trays were stacked to block the viewing of the food being served." As a result, plaintiff now eats "only once or twice some days."

20. Plaintiff filed grievances concerning this situation and others on August 22, September 11, September 21, October 21, and November 10, 2011. Plaintiff complained and complains that his "food was and has been drugged with something at time and when it is not (if so), the inmates feeding actions cause Williams to believe that his food is not safe."

21. None of plaintiff's grievances were answered.

22.  Plaintiff claims that these "oppressive acts" – "unnecessary severe monitoring of Williams by security and submissive inmates; by oddly (non customarily) forcing bed changes; calling chow only when I am awake; locking the door for chow odd (the door is not locked customarily); making new timing ruled for chow (going to chow) (4 min.); keeping stacked trays in front of the view of the food being served; putting the heat on when its hot; putting the air on when its cold; intentionally not opening the yard; closing the yard early; intentionally not giving the best yard in the afternoon; refusing Williams to eat because he tries to view his food being

5

served; etc." – continue.

23. On July 24, 2011, while at WCDC, plaintiff was locked up in cell block for a fight without a write up. He remained in cell block for two weeks without appearing before the disciplinary board or being written up. He faults defendant Hayes for this circumstance.

24. On September 7, 2011, plaintiff was forced to sign a tuberculosis medication form and forced to submit to a needle injection by Nurse Jane Doe that caused a sickness similar to the sickness caused by the kitchen food.

25. On November 2, 2011, plaintiff mailed a complaint to Sheriff Shumate demanding a response to all previous grievances; this grievance was also ignored.

26. On March 5, 2012, plaintiff's view of the food was again obscured by the manner in which the food trays were stacked and "security contrived this morning (monitoring Williams) creating this situation as usual, placing me in an odd position so as to be going against regulation that which justifies their (security) actions, whenever decided, to order me to get in line, get a tray, leave, commit and assault or battery, etc.) and therefore, succeeding in an indirect refusal to feed Williams."  Plaintiff complained that he was "assaulted by two officer for trying to view his food and advising (security) about the stacked trays..."

27. Plaintiff concluded the recitation of facts as follows, "Furthermore, Williams asserts that the administration here at WCDC including, but not limited to Defendant Hedgemon has been and continues to derail Williams godmother's acts (Bridget Williams) with eraticating the cruel oppressive acts. Hedgemon communicates with Mrs. Williams giving promises, etc. The acts by defendant Hedgemon here (and the administration) has caused delays with this suit, derailment, etc."

Plaintiff also asserts the following claims:

Claim I – Based on the facts alleged above, all defendants are liable for violating plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment due to their deliberate indifference of plaintiff's plight.

Claim II – Based on the facts alleged above, all defendants are liable for violating plaintiff's right to due process as guaranteed by the Fourteenth Amendment for failing to respond to his prisoner grievances.

Claim III – All defendants are also liable for their negligent acts, their failure to act and the acts of those "employed below their authority."

Claim IV – Defendants John Doe, Jane Doe and Shanna Mills are liable for negligence and medical malpractice.

Claim V – Barnes is liable for assault, battery and malfeasance in office.

Plaintiff concluded by praying that the court exercise supplemental jurisdiction over his state law tort claim. He prayed for an injunction directing the defendants to create a moral complaint system, an electronic mail system for legal mail, the placement in clear view of all food being served, the prohibition of the policy which allows inmates to feed, cook, or be around prison food entirely, and, the transfer of plaintiff to the Elayn Hunt Correctional Center or a half-way house in Baton Rouge.  He also prayed for compensatory and punitive damages against each defendant.

### Law and Analysis

### 1. Screening

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983,  the court is obliged to evaluate the complaint, and dismiss it without service of process, if it is frivolous, malicious, fails to state

a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).   A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. .  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949,  173 L.Ed.2d 868 (2009); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual

8

allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff, as noted above, has filed a thorough statement of his claims for relief and has recited the facts in support of each claim.  Further amendment would serve no useful purpose.

### 2. Grievances

Plaintiff complains that the defendants have ignored his grievances.   In *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court left prisoners without a federally-protected right to have grievances investigated and resolved. Any right of that nature is grounded in state law or regulation and the mere failure of an official to follow state law or regulation, without more, does not violate constitutional *minima*. See *Taylor v. Cockrell*, 2004 WL 287339 at *1 (5th Cir. Feb.12, 2004) (not designated for publication) (holding that "claims that the defendants violated ... constitutional rights by failing to investigate ... grievances fall short of establishing a federal constitutional claim"); *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005) (Prisoners do not have a federally protected liberty interest in having their grievances resolved to their satisfaction; any alleged due process violation arising from the alleged failure to investigate prisoner grievances is indisputably meritless); (see also *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) (Burger, C.J., concurring) (applauding the institution of grievance procedures by prisons but not suggesting that such procedures are constitutionally required);  *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) ("[T]he constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th

9

Cir.1993) (quotation omitted) (holding that a prison grievance procedure is not a substantive

right and "does not give rise to a protected liberty interest requiring the procedural protections

envisioned by the fourteenth amendment"); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991 *(per

curiam*) (concluding regulations providing for administrative remedy procedure do not create

liberty interests in access to that procedure); and *Mann v. Adams*, 855 F.2d 639, 640 (9th

Cir.1988) ("There is no legitimate claim of entitlement to a grievance procedure.").

Since there is no constitutionally protected right to participate in a prison grievance

procedure, plaintiff's complaint fails to state a claim for which relief may be granted.

### 3. Due Process

Plaintiff also complains that his due process rights were violated when he was placed in

lock-down for two weeks without a disciplinary hearing. By virtue of a valid criminal conviction

and subsequent legal confinement, a prisoner loses his expectation of liberty. See *Meachum v.

Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). In order to invoke

pre-deprivation procedural due process protections, a prisoner must first establish that he has

been subjected to "atypical and significant hardship ... in relation to the ordinary incidents of

prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).  On

the basis of *Sandin*, the Fifth Circuit has found that "'administrative segregation, without more,

simply does not constitute a deprivation of a constitutionally cognizable liberty interest." '

*Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir.1996) (quoting *Luken v. Scott*, 71 F.3d 192, 193

(1995)) (rejecting claim that confinement in administrative segregation violated prisoner's due

process rights); *Crowder v. True*, 74 F.3d 812, 814-15 (7th Cir.1996) (federal prisoner's

detention for three months in administrative segregation did not constitute a significant, atypical

hardship which constituted a deprivation of a liberty interest). The Fifth Circuit has also rejected

10

a state prisoner's claim that the additional restrictions imposed on those in administrative segregation violated his due process rights. *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir.1998) (per curiam). It stated " 'absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for constitutional claim because it simply does not constitute a deprivation of a constitutionally cognizable liberty interest." ' *Id.* at 580 (quotation omitted).

Plaintiff's due process claims are frivolous.

### 4. Excessive Force

Plaintiff claimed that defendant Barnes threatened him thus putting him in fear of receiving a battery. He also claimed that Barnes touched him and thus committed a battery. He thus implies that he was the victim of excessive force.  Such claims arise under the Eighth Amendment's prohibition of cruel and unusual punishment.  In this context, "[w]hen prison officials maliciously and sadistically use force to cause harm," the Eighth Amendment is violated "whether or not significant injury is evident." *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). However, "[t]hat is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.' " *Id.* at 9-10, 112 S.Ct. 995 (quoting *Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078 (1986). A *de minimis*  use of force, such as a slap or a shove, does not implicate constitutional concerns. *Id.*; *Bell v. Wolfish*, 441 U.S. 520 (1979);  *Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir.1997) (bruised ear lasting for three days after guard twisted inmate's ear and held his arm behind his back was *de minimis* and did not state a claim for excessive force);

11

*Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir.1993) (inmate who suffered no injury when sprayed with a fire extinguisher was exposed to a *de minimis* use of force and his claim was properly dismissed as frivolous). Clearly, the force described by plaintiff was a *de minimis* use of force which does not implicate the Eighth Amendment.

### 5. Tainted Food and Medication

Plaintiff also contends that he has been given poisoned food and tainted medication. As previously noted, a civil rights complaint is frivolous if it lacks an arguable basis in law (i.e. it is based upon a undisputably meritless legal theory) or in fact (i.e. the facts are clearly baseless, a category including allegations that are fanciful, fantastic, or delusional). *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir.1995); *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); *Denton v. Herndandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

Plaintiff's complaint concerning food and medication obviously falls into the category of the fanciful and delusional. It is extremely unlikely that plaintiff and plaintiff alone has been singled out for poisoning by the prison staff. Indeed, plaintiff's clearly delusional complaints concerning this issue call into question the veracity of all of his other complaints.

### Conclusion and Recommendation

Therefore,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another

12

party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir.  1996).**

In Chambers, Monroe, Louisiana, June 25, 2012.

_____

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

13